SEYFARTH SHAW LLP
Daniel Whang (SBN 223451)
dwhang@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile: (310) 201-5219

SEYFARTH SHAW LLP
Gina Gi (SBN 266708)
ggi@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:   (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Defendant
FLOOR AND DECOR OUTLETS OF
AMERICA, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES LANGWELL, and JENNIFER TENWICK, individually, and on behalf of all others similarly situated,<br><br>Plaintiffss,<br><br>v.<br><br>FLOOR AND DECOR OUTLETS OF AMERICA, INC.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. '25CV1326 BJC  DEB<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEFENDANT FLOOR AND DECOR OUTLETS OF AMERICA, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>**[28 U.S.C. §§ 1332, 1441, AND 1446]**<br><br>[San Diego County Superior Court Case No. 25CU020883C]<br><br>Complaint Filed:      April 22, 2025 |

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

# TABLE OF CONTENTS

Page

I.    BACKGROUND ...................................................................................1

II.   TIMELINESS OF REMOVAL .............................................................2

III.  CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL ..................3

      A.   Plaintiffs And Defendant Are Minimally Diverse .......................3

           1.   Plaintiffs Are Citizens Of California ................................3

           2.   Defendant Is Not A Citizen Of California ..........................4

      B.   There Are More Than 100 Potential Class Members ...................6

      C.   The Amount In Controversy Exceeds The Statutory Minimum ....6

           1.   Meal and Rest Period Claims: The Amount In Controversy
                Exceeds $11,000,000 .........................................................12

           2.   Failure to Pay Wages: The Amount In Controversy Is Nearly
                $3,000,000 .........................................................................15

           3.   Waiting Time Penalties: The Amount In Controversy Is Nearly
                $11,000,000 .......................................................................16

           4.   Wage Statement Violations: The Amount In Controversy Is
                Over $3,650,000 ................................................................18

           5.   Approximate Aggregate Amount In Controversy Exceeds
                $25,500,000 .......................................................................18

           6.   Attorneys' Fees ................................................................19

IV.   VENUE ..............................................................................................21

V.    NOTICE TO STATE COURT AND TO PLAINTIFF ...........................22

VI.   PRAYER FOR REMOVAL ..................................................................22

i

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abrego v. Dow Chemical Co.*,
  443 F.3d 676 (9th Cir. 2006) ................................................................. 6, 7

*Agredano v. Sw. Water Co.*,
  2017 WL 2985395 (C.D. Cal. May 30, 2017) ............................................ 14

*Arias v. Residence Inn by Marriott*,
  936 F.3d 920 (9th Cir. 2019) ................................................................ 8, 20

*Armstrong v. Church of Scientology Int'l*,
  243 F.3d 546 (9th Cir. 2000) ...................................................................... 4

*Arreola v. The Finish Line*,
  2014 WL 6982571 (N.D. Cal. Dec. 9, 2014) ............................................. 10

*Brady v. Mercedes-Benz USA, Inc.*,
  243 F. Supp. 2d 1004 (N.D. Cal. 2002) ..................................................... 19

*Byrd v. Masonite Corp.*,
  2016 WL 2593912 (C.D. Cal. May 5, 2016) ............................................... 17

*Campbell v. Vitran Exp., Inc.*,
  471 F. App'x 646 (9th Cir. 2012) .............................................................. 20

*Charles Langwell and Jennifer Tenwick v. Floor and Decor Outlets of
  America, Inc. and DOES 1 through 10, inclusive*,
  Case No. 25CU020883C ............................................................................. 1

*Chavez v. JPMorgan Chase & Co.*,
  888 F.3d 413 (9th Cir. 2018) ..................................................................... 20

*Cicero v. DirecTV, Inc.*,
  2010 WL 2991486 (C.D. Cal. July 27, 2010) ............................................. 21

*City of Clarksdale v. BellSouth Telecommunications, Inc.*,
  428 F.3d 206 (5th Cir. 2005) ....................................................................... 2

*Coleman v. Estes Express Lines, Inc.*,
  730 F. Supp. 2d 1141 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes
  Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ................................... 10, 15

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81, 135 S.Ct. 547 (2014) ............................................................... 8

*Feao v. UFP Riverside, LLC*,
  2017 WL 2836207 (C.D. Cal. June 26, 2017) ............................................. 11

*Franke v. Anderson Merchandisers LLC*,
  2017 WL 3224656 (C.D. Cal. July 28, 2017) ............................................. 10

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

*Fristoe v. Reynolds Metals Co.*,
  615 F.2d 1209 (9th Cir. 1980) .................................................................. 5

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
  899 F.3d 785 (9th Cir. 2018) ................................................................... 20

*Galt G/S v. JSS Scandinavia*,
  142 F.3d 1150 (9th Cir. 1998) ................................................................. 19

*Guglielmino v. McKee Foods Corp.*,
  506 F.3d 696 (9th Cir. 2007) ................................................................. 7, 9

*Hertz Corp. v. Friend*,
  130 S. Ct. 1181 (2010) .............................................................................. 5

*Ho v. Ikon Office Solutions, Inc.*,
  143 F. Supp. 2d 1163 (N.D. Cal. 2001) .................................................... 5

*Jones v. Tween Brands, Inc.*,
  2014 WL 1607636 (C.D. Cal. Apr. 22, 2014) ......................................... 11

*Kantor v. Wellesley Galleries, Inc.*,
  704 F.2d 1088 (9th Cir. 1983) ................................................................... 3

*Korn v. Polo Ralph Lauren Corp.*,
  536 F. Supp. 2d 1199 (E.D. Cal. 2008) ................................................... 8

*Longmire v. HMS Host USA, Inc.*,
  2012 WL 5928485 (S.D. Cal. Nov. 26, 2012) ......................................... 19

*Lopez v. Aerotek, Inc.*,
  2015 WL 2342558 (C.D. Cal. May 14, 2015) ......................................... 15

*Lucas v. Michael Kors (USA), Inc.*,
  2018 WL 2146403 (C.D. Cal. May 9, 2018) ........................................... 20

*Mejia v. DHL Express (USA), Inc.*,
  2015 WL 2452755 (C.D. Cal. May 21, 2015) ......................................... 14

*Muniz v. Pilot Travel Ctrs. LLC*,
  2007 WL 1302504 (E.D. Cal. May 1, 2007) ................................... 8, 9, 19

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
  526 U.S. 344 (1999) .................................................................................. 2

*Powers v. Eichen*,
  229 F.3d 1249 (9th Cir. 2000) ................................................................. 20

*In re Quintas Secs. Litig.*,
  148 F. Supp. 2d 967 (N.D. Cal. 2001) .................................................... 21

*Ramos v. Schenker, Inc.*,
  2018 WL 5779978 (C.D. Cal. Nov. 1, 2018) ......................................... 20

iii

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

*Ritenour v. Carrington Mortg. Servs. LLC*,
    228 F. Supp. 3d. 1025 (C.D. Cal. 2017) .................................................. 11

*Rodriguez v. AT&T Mobility Servs. LLC*,
    728 F.3d 975 (9th Cir. 2013) ................................................................ 7, 9

*Sanchez v. Monumental Life Ins. Co.*,
    102 F.3d 398 (9th Cir. 1996) ....................................................................... 8

*Schiller v. David's Bridal, Inc.*,
    2010 WL 2793650 (E.D. Cal. July 14, 2010) ............................................ 8

*Soliman v. Philip Morris, Inc.*,
    311 F. 3d 966 (9th Cir. 2002) ..................................................................... 5

*Soratorio v. Tesoro Ref. and Mktg. Co., LLC*,
    2017 WL 1520416 (C.D. Cal. Apr. 26, 2017) ................................ 9, 11, 13

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013) .................................................................................... 7

*State Farm Mut. Auto Ins. Co. v. Dyer*,
    19 F.3d 514 (10th Cir. 1994) ...................................................................... 4

*Tajonar v. Echosphere*,
    LLC, 2015 WL 4064642 (S.D. Cal. July 2, 2015) .................................... 17

*Torrez v. Freedom Mortg., Corp.*,
    2017 WL 2713400 (C.D. Cal. June 22, 2017) .......................................... 10

*Valdez v. Allstate Ins. Co.*,
    372 F.3d 1115 (9th Cir. 2004) ................................................................ 8, 9

*Wheatley v. MasterBrand Cabinets*,
    2019 WL 688209 (C.D. Cal. Feb. 19, 2019) ................................... 9, 14, 20

*Wren v. RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ........................................... 20

*Zavala v. Deutsche Bank Trust Co. Americas*,
    2013 WL 3474760 (N.D. Cal. July 10, 2013) ............................................ 4

**State Cases**

*Caliber Bodyworks, Inc. v. Sup. Ct.*,
    134 Cal. App. 365 (2005) ......................................................................... 18

*Falk v. Children's Hosp. Los Angeles*,
    237 Cal. App. 4th 1454 (2015) ................................................................. 16

*Murphy v. Kenneth Cole Prods.*, Inc.,
    40 Cal. 4th 1094 (2007) ............................................................................ 12

*Pineda v. Bank of America, N.A.*,
    50 Cal. 4th 1389 (2010) ..................................................................... 13, 17

iv

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

**Federal Statutes**

28 U.S.C. § 84(a) ............................................................................................. 21, 22

28 U.S.C. § 1332 ....................................................................................................... 5

28 U.S.C. § 1332(c)(1) ......................................................................................... 4, 5

28 U.S.C. § 1332(d) ............................................................................................. 7, 21

28 U.S.C. § 1332(d)(2) .................................................................................... 3, 6, 21

28 U.S.C. § 1332(d)(2)(A) ...................................................................................... 3

28 U.S.C. § 1332(d)(5)(B) .................................................................................... 3, 6

28 U.S.C. § 1332(d)(6) ......................................................................................... 3, 6

28 U.S.C. § 1367(a) ................................................................................................ 21

28 U.S.C. § 1391(a) ................................................................................................ 21

28 U.S.C. § 1441 ..................................................................................................... 21

28 U.S.C. § 1441(a) .................................................................................... 3, 5, 21, 22

28 U.S.C. §§ 1446 .................................................................................................... 2

28 U.S.C. § 1446(b) ................................................................................................. 2

28 U.S.C. § 1446(d) ................................................................................................ 22

Class Action Fairness Act ............................................................................... *passim*

Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at
    28 U.S.C. § 1446(c)(2) ....................................................................................... 7

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................. 12, 13, 16

Cal. Bus. & Prof. Code § 17208 ............................................................................ 13

Cal. Civ. Proc. Code § 338 ..................................................................................... 16

Cal. Civ. Proc. Code § 340(a) ................................................................................ 18

Cal. Code Civ. Proc. § 338, subd.(a) ..................................................................... 17

Cal. Code Civ. Proc. § 415.10 .................................................................................. 2

Cal. Lab. Code § 201 .............................................................................................. 16

Cal. Lab. Code § 202 .............................................................................................. 16

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

317908933v.2

Cal. Lab. Code § 203 ........................................................................................... 17

Cal. Lab. Code § 203(a) ...................................................................................... 17

Cal. Lab. Code § 226 ........................................................................................... 18

Cal. Lab. Code § 226(e) ...................................................................................... 18

Cal. Lab. Code § 226.7 ........................................................................................ 12

Cal. Lab. Code § 510 ........................................................................................... 16

Cal. Lab. Code § 1194 ......................................................................................... 16

**Rules**

Rule 6(a)(2)(C) ....................................................................................................... 2

**Regulations**

Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005),
    *reprinted in* 2005 U.S.C.C.A.N. 3, 40. ........................................................ 6

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

317908933v.2

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS, CHARLES LANGWELL and JENNIFER TENWICK, AND PLAINTIFFS' ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Floor and Decor Outlets of America, Inc. ("Defendant") files this Notice of Removal, pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453, to effectuate the removal of the above-captioned action from the Superior Court for the County of San Diego to the United States District Court for the Southern District of California.

This Court has original jurisdiction under 28 U.S.C. §§ 1332(c), (d)(2) – the Class Action Fairness Act of 2005 ("CAFA").  Removal is proper for the following reasons:

## I.    BACKGROUND

1.      On February 6, 2023, Plaintiffs Charles Langwell and Jennifer Tenwick ("Plaintiffs") filed a class action complaint in the Superior Court of California for the County of San Diego, entitled *Charles Langwell and Jennifer Tenwick v. Floor and Decor Outlets of America, Inc. and DOES 1 through 10, inclusive,* Case No. 25CU020883C ("Complaint").

2.      On April 24, 2025, Defendant's registered agent for service of process in California received, via process server, the Summons; Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference (Civil); Notice of E-Filing Requirements and Imaged Documents; Alternative Dispute Resolution (ADR) Information; and Stipulation to Use Alternative Dispute Resolution (ADR).  A true and correct copy of the documents received by Defendant on February 10, 2023 is attached hereto as **Exhibit A**.  A true and correct copy of the Service of Process Notification from CT Corporation (Defendant's registered agent for service of process) is attached hereto as **Exhibit B.**

3.      On May 20, 2025, Defendant filed an Answer to Plaintiff's Complaint in the Superior Court or the County of San Diego. A true and correct copy of the Answer is attached hereto as **Exhibit C**.

4.     Defendant has not filed or received any other pleadings or papers, other than the pleadings described as Exhibits A though C in this action prior to this Notice of Removal.

## II.     TIMELINESS OF REMOVAL

5.     The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

6.     The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

7.     This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint, by personal service on Defendant's registered agent for service of process, on April 24, 2025. (Ex. B.) Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served.  Service of a summons in this manner is deemed complete at the time of such delivery."); 28 U.S.C. § 1446(b).  Thirty (30) days from the service of the Complaint on Defendant on April 24, 2025 is Saturday, May 24, 2025.  Under Rule 6(a)(2)(C), the date to remove is extended to Monday, May 26, 2025.

8.     Plaintiffs assert eight causes of action in Plaintiffs' Complaint against Defendant: (1) failure to pay minimum wage; (2) failure to pay overtime; (3) failure to provide meal periods; (4) failure to authorize and permit rest breaks; (5) failure to

2

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

reimburse necessary business expenses; (6) failure to timely pay final wages at termination; (7) failure to provide accurate itemized wage statements; and (8) unfair business practices. (Ex. A, Complaint.)

9.     The Complaint seeks to certify a class of "current and former employees" of Defendant and who worked for Defendant "in California as an hourly-paid, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." (Ex. A, Complaint, ¶¶ 2, 24.)

10.     Accordingly, for purposes of the calculations in this Notice of Removal, the relevant time period starting four (4) years preceding the filing of Plaintiff's Complaint is from **April 22, 2021** until the present.

## III.    CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL

11.     This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. Section 1332(d)(2). As set forth below, this action is properly removable, pursuant to 28 U.S.C. Section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the action is a class action in which at least one purported class member is a citizen of a state different from that of a defendant. 28 U.S.C. §§ 1332(d)(2) & (d)(6). Furthermore, the number of putative class members is greater than 100. 28 U.S.C. § 1332(d)(5)(B).

### A.    Plaintiffs And Defendant Are Minimally Diverse

12.     CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).

### 1.    Plaintiffs Are Citizens Of California

13.     For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common

3

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

law a party must … be domiciled in the state"). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

14.     Plaintiff Charles Langwell alleges that he is a California resident that worked for Defendant in the State of California. (Ex. A, Complaint, ¶ 7.) In his employment files, Plaintiff listed his home address as being in La Quinta, California. (Declaration of Jonathan Maule ("Maule Decl."), ¶ 5.) Plaintiff Langwell's intent to remain domiciled in California is further evident from the fact that he brought his lawsuit against Defendant in San Diego County Superior Court. Accordingly, Plaintiff Langwell is a citizen of California.

15.     Similarly, Plaintiff Jennifer Tenwick alleges that she is a California resident that worked for Defendant in the State of California. (Ex. A, Complaint, ¶ 7.) In her employment files, Plaintiff listed her home address as being in Santee, California, a city in San Diego County. (Maule Decl., ¶ 5.) Plaintiff Tenwick's intent to remain domiciled in California is further evident from the fact that she brought her lawsuit against Defendant in San Diego County Superior Court. Accordingly, Plaintiff Tenwick is a citizen of California.

## 2.     Defendant Is Not A Citizen Of California

16.     Defendant is now, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. section 1332(c)(1).

4

317908933v.2

17.     Pursuant to 28 U.S.C. section 1332(c)(1), "for purposes of this subsection … [a] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  To determine a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters.  *Id.*  Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based. *Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters were located, where the corporate officers worked, and from where corporate policies and procedures were made).

18.     Floor and Decor Outlets of America, Inc. is incorporated under the laws of Delaware, and its principal place of business is in Georgia. (Maule Decl., ¶ 4.) Defendant maintains corporate headquarters in Georgia, and its high-level officers direct, control, and coordinate the corporation's activities from these headquarters. (*Id.*) Additionally, the majority of Defendant's executive and administrative functions are performed in or directed from Georgia, including corporate finance, accounting, purchasing, marketing, legal and information systems. (*Id.*) Accordingly, Defendant was at the time this action was commenced, and remains today, a citizen of the States of Delaware and Georgia, and not a citizen of the State of California. (*Id.*)

19.     **Doe Defendants.** Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if

5

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

and when the plaintiff seeks leave to substitute a named defendant"). Indeed, the presence of "DOE" defendants in this case has no bearing on diversity of citizenship for removal. Thus, the existence of "DOES 1-10" in the Complaint does not deprive this Court of jurisdiction. *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

## B. There Are More Than 100 Potential Class Members

20.    CAFA requires that the aggregated number of members of all proposed classes in a complaint be at least 100.  28 U.S.C. § 1332(d)(5)(B).

21.    The proposed class in the Complaint is defined as "current and former employees" of Defendant who worked for Defendant "in California as an hourly-paid, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." (Ex. A, Complaint, ¶¶ 2, 24.) (Ex. A, Complaint, ¶ 27.)

22.    Since April 22, 2021, Defendant employed approximately 4,821 non-exempt employees in the State of California ("Putative Class Members"). (Maule Decl, ¶¶ 6-7.)

## C. The Amount In Controversy Exceeds The Statutory Minimum

23.    CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40. The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 42-43 ("if a federal court is uncertain about

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

317908933v.2

whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

24.   **Preponderance of the Evidence Standard.** Plaintiff's Complaint does not allege the amount in controversy for the class he purports to represent. Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a **preponderance of the evidence** that the amount in controversy exceeds the statutory minimum. In *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard. *Accord Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

25.   In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the *preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)." Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

317908933v.2

defendant"). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

26. To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S.Ct. 547, 554 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'") (emphasis added).

27. The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

28. It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal.

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

317908933v.2

May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

29.     As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

30.     **The Court Should Assume A 100% Violation Rate Based On Plaintiffs' Class-Wide Allegations.** If a plaintiff asserts statutory violations, the court should assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

31.     *Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations . . . Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform . . . policies were applied to **all** putative class members reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a

100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

32.     Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar

10

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio*, *LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

33.    The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000. The Complaint seeks to certify a class of "current and former employees" of Defendant and who worked for Defendant "in California as an hourly-paid, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." (Ex. A, Complaint, ¶¶ 2, 24.)   Accordingly, for purposes of the calculations in this Notice of Removal, the relevant time period starting "four years prior to the filing of this action" is from April 22, 2021 until the present.

34.    During the relevant time period identified in the Complaint, Defendant employed approximately 4,821 Putative Class Members, who worked approximately 286,981 workweeks. (Maule Decl, ¶ 7.) The average rate of pay for the Putative Class

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

Members was approximately $20.55 per hour. (*Id.*) Among other things, Plaintiffs seek to recover on behalf of themselves and the Putative Class Members, meal and rest period premiums for Defendant's alleged failure to provide meal and rest breaks, unpaid wages for Defendant's alleged failure to pay minimum and overtime wages, unreimbursed business expenses, penalties for Defendant's alleged failure to provide accurate wage statements, and waiting time penalties for Defendant's alleged failure to pay all wages due upon resignation or termination of employment. (Ex. A, Complaint.) Plaintiff also seeks attorneys' fees and costs. (*Id.*, Prayer for Relief.)

35.     As set forth below, the alleged amount in controversy implicated by the class-wide allegations exceeds $5,000,000. All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.

36.     The calculations below show that the alleged amount in controversy far exceeds $5,000,000, when considering non-exempt employees, such as Plaintiffs.

### 1.    Meal and Rest Period Claims: The Amount In Controversy Exceeds $11,000,000

37.     Plaintiffs seek payments for alleged denial of or missed or interrupted meal periods and rest periods. (Ex. A, Complaint, ¶¶ 4(b)-4(c), 52, 55.) Plaintiffs allege that "Defendant's practices were deceptive and fraudulent in that Defendant's policy and practice failed to provide the legally mandated meal and rest periods …."  (*Id.* at ¶ 51.)

38.     The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years. *Murphy v. Kenneth Cole Prods.*, *Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). However, Plaintiffs allege a claim for meal and rest break premiums pay as part of their unfair competition claim under Business and Professions Code section 17200, *et seq*. (Ex. A, Complaint, ¶¶ 77-81, 85-86.) Although Defendant contends that

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

meal and rest break premium pay cannot be recovered under Business and Professions Code section 17200 (*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010)), according to the allegations of Plaintiffs' Complaint, the four-year statute of limitations applies for purposes of removal. Cal. Bus. & Prof. Code § 17208. Thus, for determining the amount in controversy, the four-year statute of limitations applies.

39.    Plaintiffs are silent as to the exact amount of alleged meal periods or rest periods they claim to have been denied, thereby precluding precise estimates of the amount in controversy. Plaintiffs allege that Defendant maintained a "systematic, company-wide policy or practice of failing to provide employees with timely and duty-free meal periods" and "failing to authorize and permit employees to take timely and duty-free rest periods." *See* Ex. A, Complaint, ¶ 4(b)-(c).

40.    Plaintiffs' allegation that Defendant maintained **a policy or practice** of not providing meal and rest periods entitles Defendant to assume a 100 percent violation rate when calculating the amount in controversy for removal jurisdiction. *See, e.g., Soratorio*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendant 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."). Here, Plaintiffs also allege that "Plaintiffs and the class were not permitted to leave the premises during breaks" which, if taken as true, would further warrant the assumption of a 100 percent violation rate. *See* Ex. A, Complaint, ¶ 16.

41.    During the relevant time period identified in the Complaint, Defendant employed approximately 4,821 Putative Class Members, who worked approximately 286,981 workweeks. The average rate of pay for the Putative Class Members was approximately $20.55 per hour.

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

42.    Although Defendant denies that Plaintiffs (or any putative class member) is entitled to any meal or rest period premium payments, assuming five meal period violations per week for each Putative Class Member, the amount in controversy for the meal period claim would be approximately **$29,487,298** [(286,981 workweeks) × ($20.55 per hour) × (5 premium payments per week)].  Assuming five rest period violations per week for each Putative Class Member, the amount in controversy for the rest period claim would also be approximately **$29,487,298** [(286,981 workweeks) × ($20.55 per hour) × (5 premium payments per week)].

43.    While Defendant is entitled to assume a 100% violation rate (*i.e.*, at least five missed meal periods per workweek) based on the allegations when calculating the amount in controversy for removal jurisdiction, Defendant will conservatively assume that putative class members were not provided **one meal period each workweek**.  Where Plaintiffs have alleged a policy and practice of meal period violations, it is reasonable to assume when calculating the amount in controversy that there at least one meal period violation each week for every employee.  Indeed, District Courts have consistently upheld even higher assumptions of meal period violations as plausible for purposes of determining the amount in controversy.  *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period violations per week reasonable where Plaintiff alleged a "a policy and practice" of meal period violations); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30–minute lunch break periods. Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed fewer than five legally required meal breaks per week.  Thus, the Court finds that 'Plaintiff's own complaint alleges universal violations of meal ... period laws' such that Defendants' 'use of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding an estimate of

14

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

five missed rest periods a week reasonable where plaintiff alleged that defendant maintained "policies, practices and procedures that caused the purported violations. . ."); *Lopez v. Aerotek, Inc.*,  2015 WL 2342558, at *2 (C.D. Cal. May 14, 2015) (finding defendant's estimate of five meal period violations was reasonable); *Coleman v. Estes Express Lines*, Inc., 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate," i.e., five missed meal periods per week).

44.     Even assuming just one meal period violation per week for each Putative Class Member, the amount in controversy for the meal period claim would be approximately **$5,897,460** [(286,981 workweeks) × ($20.55 per hour) × (1 premium payments per week)]. Assuming just one rest period violation per week for each Putative Class Member, the amount in controversy for the rest period claim would also be approximately **$5,897,460** [(286,981 workweeks) × ($20.55 per hour) × (1 premium payments per week)].

45.     Accordingly, the amount in controversy on Plaintiffs' meal and rest period claims is at least **$11,794,919**.

### 2.     Failure to Pay Wages: The Amount In Controversy Is Nearly $3,000,000

46.     Plaintiffs' Complaint alleges that "Defendant maintained a systematic, company-wide policy and practice of: (a) Failing to pay employees for all hours worked, including all minimum wages, and overtime wages" and that Defendant "regularly use a system of time rounding in a manner that resulted, over a period of time, in failing to compensate Plaintiffs and the Class properly for all the time they have actually worked." (Ex. A, Complaint, ¶¶ 4(a), 15.)

47.     The Complaint also alleges that "Plaintiffs and the Class were required to work off-the-clock, and uncompensated. Also, Plaintiffs and the Class were required to

perform duties prior to and after clocking into and out of work." (Ex. A, Complaint, ¶ 15.)

48.    The statute of limitations for unpaid wages under California Labor Code §§ 510 and 1194 is three years. Cal. Civ. Proc. Code § 338. The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations. *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) ("actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation"). Plaintiffs allege a claim for failure to pay minimum and overtime wages as part of their unfair competition claim under Business and Professions Code section 17200, *et seq*. (Ex. A, Complaint, ¶¶ 77-83.) Accordingly, the proposed class period for Plaintiffs' minimum wage and overtime claim is from April 22, 2021 until the present.

49.    During the relevant time period identified in the Complaint, Defendant employed approximately 4,821 Putative Class Members, who worked approximately 286,981 workweeks.  The average rate of pay for the Putative Class Members was approximately $20.55 per hour.

50.    Although the Complaint does not specify how much Putative Class Members were allegedly underpaid due to alleged rounding of time or how long Putative Class Members allegedly worked off the clock, Defendant will assume for purposes of calculating the amount in controversy that the amount of uncompensated time was 6 minutes each day, and using just the base rate of pay, not the overtime rate, which would further increase the amounts. The amount in controversy for the unpaid wages claim is **$2,948,730** [(286,981 workweeks) × ($20.55 per hour) × 0.1 hours × 5 days a week].

### 3.    <u>Waiting Time Penalties: The Amount In Controversy Is Nearly $11,000,000</u>

51.    As discussed above, the Complaint alleges that Defendant "failed, and continued to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code sections 201 and 202 either at the time of discharge,

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

317908933v.2

or within seventy-two (72) hours of their leaving Defendant's employ." (Ex. A, Complaint, ¶ 64.) Plaintiffs demand thirty days of pay as penalty for not receiving all wages due at time of termination. (Ex. A, Complaint, ¶ 66.)

52.     Under California Labor Code section 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

53.     The statute of limitations period for California Labor Code section 203 penalties extends back only three years from the date of filing of the complaint, or March 1, 2019. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats. 1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

54.     It is also reasonable to assume that each employee waited over 30 days for payment of any allegedly unpaid wages. *See Tajonar v. Echosphere*, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

55.     During the relevant three-year time period for waiting time penalties, from April 22, 2022 to the present, there were a total of approximately 2,217 Putative Class Members who terminated their employment with Defendant in California. (Maule Decl, ¶ 9.)

56.     Although Defendant disputes liability, a reasonable estimate of the amount in controversy for waiting time penalties is **$10,934,244** [$20.55/hour × 8 hours/day × 30 days × 2,217 former employees].

### 4.     Wage Statement Violations: The Amount In Controversy Is Over $3,650,000

57.     Plaintiffs allege that Defendant "intentionally and willfully failed to provide employees with complete and accurate wage statements" and that these "deficiencies include, among other things, the failure to correctly identify the gross wages earned by Plaintiffs and the Class, the failure to list the true total hours worked by the employee, and the failure to list the true net wages earned." (Ex. A, Complaint, ¶ 71.)

58.     As a result, Plaintiffs seek "penalties and actual damages pursuant to Labor Code § 226(e)." (Ex. A, Complaint, Prayer for Damages, ¶ 36.)

59.     Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee. The statute of limitations for recovery of penalties under Labor Code § 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).  Because Plaintiffs filed their Complaint on April 22, 2025, the statutory period for the claim under California Labor Code § 226 runs from April 22, 2024 to the present.

60.     During the limitations period beginning on April 22, 2024, there are approximately 2,072 potential class members and approximately 37,579 bi-weekly pay periods. (Maule Decl, ¶ 8.) When assessing a $50 penalty for the initial wage statement violation and $100 for each subsequent wage statement violation, the amount in controversy for this claim would equal no less than $3,654,300 [($50 for the first 2,072 pay periods) + ($100 for each of the subsequent 35,507 pay periods)].

### 5.     Approximate Aggregate Amount In Controversy Exceeds $25,500,000

61.     Although Defendant denies Plaintiffs' allegations that they or the Putative Class Members are entitled to any relief for the above-mentioned claims, based on the

forgoing calculations, the aggregate amount in controversy for all asserted claims, exclusive of attorneys' fees, is approximately **$25,677,894**, calculated as follows:

| | |
|---|---|
| **$5,897,460** | Meal Period Claim (Assuming Just 1 Meal Period Violation Per Workweek) |
| **$5,897,460** | Rest Period Claim (Assuming Just 1 Rest Period Violation Per Workweek) |
| **$2,948,730** | Unpaid Wages (Assuming 6 Minutes Per Day) |
| **$10,934,244** | Waiting Time Penalties |

62.    The figures above do not factor in the overtime rate of pay, do not take into account Plaintiffs' claims for underpayments based on the failure to correctly calculate regular rate of pay, and do not factor in the claim for failure to reimburse business expenses, which would further increase the amounts in controversy.

### 6.    Attorneys' Fees

63.    Plaintiffs also seek attorneys' fees. (Ex. A, Complaint, Prayer for Relief.) Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy").

64.    A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at 1010-11); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

317908933v.2

65.     The Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal – for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

66.     Indeed, the Ninth Circuit again very recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

67.     In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted.  *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *28-29 (N.D. Cal.

20

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6-7 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund). Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiffs' claims, attorneys' fees alone would be upward of **$6,419,473** in this case [$**25,677,894** amount in controversy × 0.25].

68.     Although Defendant denies Plaintiffs' allegations that Plaintiffs or the putative class are entitled to any relief, based on Plaintiffs' allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy is at least **$32,097,367,** including attorneys' fees.  This total amount in controversy exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

69.     Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

70.     To the extent that Plaintiffs have alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## IV.    <u>VENUE</u>

71.     Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(a). This action originally was brought in San Diego County Superior Court of the State of California, which is located

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

317908933v.2

within the Southern District of California. 28 U.S.C. § 84(a). Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

72.    A true and correct copy of this Notice of Removal will be promptly served on Plaintiffs and filed with the Clerk of the San Diego County Superior Court of the State of California as required under 28 U.S.C. § 1446(d).

## V.    NOTICE TO STATE COURT AND TO PLAINTIFF

73.    Defendant will give prompt notice of the filing of this Notice of Removal to Plaintiffs and to the Clerk of the Superior Court of the State of California in the County of San Diego. The Notice of Removal is concurrently being served on all parties.

## VI.    PRAYER FOR REMOVAL

74.    WHEREFORE, Defendant prays that this civil action be removed from Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California.

DATED: May 23, 2025                   Respectfully submitted,

SEYFARTH SHAW LLP

By: _____
      Daniel Whang
      Gina Gi
      Attorneys for Defendant
      FLOOR AND DECOR OUTLETS OF
      AMERICA, INC.

22

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT