UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES LANGWELL, and JENNIFER TENWICK, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLOOR AND DECOR OUTLETS OF AMERICA, INC.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  25-cv-1326-BJC-DEB<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND TO STATE COURT**<br><br><br>**[ECF No. 11]** |

Before the Court is Charles Langwell and Jennifer Tenwick's ("Plaintiffs") motion to remand to state court.  Defendants filed an opposition and Plaintiffs replied.  The Court decides the matter on the papers submitted and without oral argument.  *See* Civ. L. R. 7.1(d)(1). For the reasons stated below, Plaintiffs' motion is denied.

## I.   BACKGROUND

On April 22, 2025, Plaintiffs filed a class action complaint ("Complaint") in the Superior Court of the State of California, County of San Diego, alleging violations of the California Labor Code against Defendant, including: (1) Failure to Pay Minimum Wages

25-cv-1326-BJC-DEB

[Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197]; (2) Failure to Pay Overtime Compensation [Cal. Lab. Code §§ 1194 and 1198]; (3) Failure to Provide Meal Periods [Cal. Lab. Code §§ 226.7, 512]; (4) Failure to Authorize and Permit Rest Breaks [Cal. Lab. Code § 226.7]; (5) Failure to Indemnify Necessary Business Expenses [Cal. Lab. Code § 2802]; (6) Failure to Timely Pay Final Wages at Termination [Cal. Lab. Code §§ 201-203]; (7) Failure to Provide Accurate Itemized Wage Statements [Cal. Lab. Code § 226]; and (8) Unfair Business Practices [Cal. Bus. & Prof. Code §§ 17200, et seq.].  ECF No. 1-2 at 5. On May 23, 2025, Defendant removed this case to this Court, invoking subject matter jurisdiction under the Class Action Fairness Act ("CAFA").  ECF No. 1 at 8.

## II.    LEGAL STANDARD

"CAFA provides expanded original diversity jurisdiction for class actions meeting the amount in controversy and minimal diversity and numerosity requirements outlined in 28 U.S.C. § 1332(d)(2)." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090–91 (9th Cir.2010).  "Federal jurisdiction under CAFA has three elements: (1) there must be minimal diversity of citizenship between the parties, (2) the proposed class must have at least 100 members, and (3) the amount in controversy must 'exceed[] the sum or value of $5,000,000." *Kuxhausen v. BMW Fin. Ser*vs., NA LLC, 707 F.3d 1136, 1139 (9th Cir. 2013) (citing 28 U.S.C. § 1332(d)).  Under CAFA, the removing defendant bears the burden of establishing federal jurisdiction.  *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025).  However, unlike the general presumption against removal, "no anti-removal presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (same).

## III.    DISCUSSION

In their motion to remand, Plaintiffs argue that Defendant failed to establish, by a preponderance of the evidence, that the amount in controversy requirement under CAFA is satisfied.  ECF No. 11 at 7.  Defendant responds that it has demonstrated, by a

25-cv-1326-BJC-DEB

preponderance of the evidence, that the amount in controversy exceeds $5 million and further contends that Plaintiffs' motion should be denied because Plaintiffs have presented no evidence disputing Defendant's calculations. ECF No. 15 at 8-9. Defendant also emphasizes that any doubt should be resolved in favor of federal jurisdiction. *Id.* at 8. The Court addresses each argument in turn.[1]

### A.      **Burden of Proof**

The Court first addresses which party bears the burden of establishing the amount in controversy before turning to whether that burden has been satisfied. Plaintiffs argue that Defendant bears the burden of both establishing a reasonable amount in controversy and supporting its calculations with extrinsic evidence. ECF No. 11 at 7, 11. Defendant responds that it has provided reasonable estimates demonstrating that the amount in controversy exceeds the jurisdictional threshold. ECF No. 15 at 10. Defendant further argues that Plaintiffs have failed to present any evidence rebutting Defendant's calculations. *Id.* at 12. Finally, Defendant contends that no anti-removal presumption applies under the Class Action Fairness Act. *Id.* at 11.

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Accordingly, when filing a notice of removal, a removing defendant need not present evidence of what its ultimate liability will be—in many cases, the defendant presumably expects that figure to be zero." *Id.* Rather, the defendant only needs to provide "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Basin Operating Co. v. Owens*, 135 S.Ct. 547, 554, (2014). A removing defendant may satisfy this burden by relying on "a chain of reasoning that includes assumptions to calculate the amount in controversy." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (citations and quotations omitted). Although "those

---

[1] Plaintiff does not dispute Defendant's showing of CAFA's other requirements (minimum diversity and numerosity).

assumptions cannot be pulled from thin air," they may be founded on the allegations of the complaint and need not necessarily be supported by independent evidence. *Id.*

However, where a plaintiff contests the defendant's amount-in-controversy allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 574 U.S. at 82. In making that determination, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir.1997)). The Court then evaluates the parties' evidence and competing assumptions to determine whether the defendant's calculations are reasonable. *Perez*, 131 F.4th at 804 ("The district court's task is simply to determine if the defendant's "reasoning and underlying assumptions are reasonable.") (citations and quotations omitted). In making this determination, it is important to note that "an assumption is not unreasonable simply because another equally valid assumption may exist." *Perez*, 131 F.4th at 809. Thus, "an assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be less than the requisite amount." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).

In the present action, Plaintiff's complaint did not allege a specific amount in controversy. *See generally* ECF No. 1-2. Pursuant to CAFA, Defendant filed a notice of removal and calculated the amount in controversy to be at least $32,097,367, including attorneys' fees. ECF No. 1 at 28. Plaintiffs are incorrect to the extent they argue that Defendant was required to submit extrinsic evidence proving its proposed violation rates. *See Lewis*, 627 F.3d at 400 ("[W]hen filing a notice of removal, a removing defendant need not present evidence of what its ultimate liability will be."). Rather, Defendant was only required to plausibly allege that the amount in controversy exceeded the jurisdictional threshold. *Dart Basin Operating Co.*, 135 S.Ct. at 554. By filing the present motion to

25-cv-1326-BJC-DEB

remand, Plaintiffs contested Defendant's amount-in-controversy calculations. Accordingly, although Defendant retains the burden of establishing federal jurisdiction and demonstrating the amount in controversy by a preponderance of the evidence, both parties may submit evidence regarding the propriety of Defendant's assumptions and calculations. *See Dart Cherokee*, 574 U.S. at 82 ("[B]oth sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."). Thus, while Defendant is correct that no anti-removal presumption applies in CAFA cases, Defendant nevertheless bears the burden of establishing that federal jurisdiction exists. *Id.* at 89 (citations and quotations omitted) ("CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

## B.    Amount in Controversy

### 1. Third and Fourth Causes of Action: Meal Periods and Rest Breaks

The Complaint alleges that "[t]hroughout the statutory period Defendants maintained a systematic, company-wide policy and practice of . . . [f]ailing to provide employees with timely and duty-free meal periods…and duty-free rest periods." ECF No. 1-2 at 7-8. The Complaint also alleges that "Defendants sometimes, but not always" failed to provide meal or rest breaks. *Id.* at 11, 12. In its notice of removal, Defendant assumed that putative class members experienced one meal-period violation and one rest-break violation per workweek. ECF No. 1 at 21. Using that assumption, Defendant calculated the total number of workweeks for non-exempt employees during the statutory period and multiplied that figure by the average hourly wage to estimate the applicable premium payments. *Id.* at 22. Based on this methodology, Defendant calculated approximately $5,897,460 in controversy for the meal-period claim and an additional $5,897,460 for the rest-break claim, for a combined total of approximately $11,794,919. *Id.* In their motion to remand, Plaintiff argues that Defendant's estimate is unreasonable because it is not supported by evidence and fails to account for periods of employee leave. ECF No. 11 at 11-16.

25-cv-1326-BJC-DEB

When calculating the amount in controversy for meal and rest break violations, a defendant's assumptions must be grounded in the allegations of the complaint and supported by reasonable evidence. For example, in *Perez*, the complaint alleged that the defendant violated "at times" and "throughout the statutory period." 131 F.4th 804 (9th Cir. 2025). In calculating the amount in controversy, the defendant assumed that, every week during the class period, it failed to pay all class members for one hour of regular time, one hour of overtime, one compensable meal break, and one compensable rest break. *Id.* at 807. Although the district court rejected those assumptions as unsupported by evidence, the Ninth Circuit reversed. The Court explained

> It may be true that the phrase "at times" could support a lower violation rate as easily as it could support the violation rate that [the defendant] assumed. But that does not automatically render the rate assumed by [the defendant] unreasonable. And if [Plaintiff] believed that some other assumption would have been *more* reasonable, she was free to propose that rate.

*Id.* at 810. Conversely, in *Harris v. KM Indus., Inc.*, the plaintiff alleged meal and rest break violations on behalf of several putative classes and subclasses, including the "Hourly Employee Class," the "Meal Period Sub-Class," and the "Rest Period Sub-Class." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 697 (9th Cir. 2020). The defendant calculated the amount in controversy by assuming that *all* hourly employees missed one meal period every week and two rest periods every week. *Id.* at 698. The defendant provided no evidence showing how many employees actually worked qualifying shifts or belonged to the subclasses. *Id.* at 701. As a result, the court found the defendant's calculations speculative and insufficient to establish federal jurisdiction under CAFA. *Id.* at 702.

Here, Defendant has demonstrated by a preponderance of the evidence that its assumption was reasonable. As in *Perez*, the Complaint here alleges violations occurring "throughout the statutory period." However, unlike *Harris*, where the complaint defined narrower subclasses and depended on qualifying shifts, Plaintiff's Complaint here does not plead such limiting categories. In the absence of those constraints, Defendant reasonably applied a uniform violation rate across the putative class. At the removal stage, Defendant

6

was not required to prove the precise number of violations, but only to provide a plausible estimate grounded in the Complaint and supported by evidence. Defendant has met that burden.

### 2. First Cause of Action: Failure to Pay Minimum Wages

The Complaint alleges that Defendant "maintained a policy and practice" of not paying all wages owed, "regularly" rounded, and required employees to work off the clock. ECF No. 1-2 at 11. In the notice of removal, Defendants noted that the Complaint does not specify how much Putative Class Members were allegedly underpaid due to alleged rounding of time or how long Putative Class Members allegedly worked off the clock. ECF No. 1 at 23. Accordingly, Defendants assumed that the amount of uncompensated time was 6 minutes each day, and using just the base rate of pay, not the overtime rate, Defendant calculated the total amount in controversy for the unpaid wages to be $2,948,730.[2] In the motion to remand, Plaintiffs argue that "Defendants fail to account for any sick days, vacation days, and other leave of absence of putative class members during the class period." ECF No. 11 at 18.

Courts have found assumptions of less than one hour of unpaid work per week to be reasonable in calculating minimum wage damages. For example, in *Arias*, Plaintiff's complaint alleged that Defendant "routinely" failed to pay its employees overtime. 936 F.3d at 923. The defendant removed the case, assuming that each class member worked six minutes of unpaid overtime per day, totaling 30 minutes per week. *Id.* The district court remanded, concluding that the defendant had not proven actual violations at the assumed rate. *Id.* at 924. The Ninth Circuit reversed, explaining that "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have "some reasonable ground underlying them." *Id.* at 927 (citations and quotations omitted). Likewise, in *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, *1218 (N.D. Cal.

---

[2] (286,981 workweeks) × ($20.55 per hour) × 0.1 hours × 5 days a week.

25-cv-1326-BJC-DEB

2019), the complaint alleged a "pattern and practice" of wage-and-hour violations. The defendant calculated the amount in controversy by conservatively assuming that putative class members worked one hour of unpaid overtime per week. *Id.* The plaintiff moved to remand, proposing instead an assumption of fifteen minutes per week. *Id.* The Court reasoned that Defendant's assumption was not unreasonable, and therefore, denied the motion to remand. *Id.* at 1219.

In the present case, Plaintiffs' Complaint broadly alleges a "policy and practice" of unpaid wages, regular time rounding, and off-the-clock work, but provides no specific estimate of the frequency or duration of these violations. As in *Arias*, where the defendant reasonably assumed six minutes of unpaid overtime per day based on similarly generalized allegations, Defendants here adopt the same modest assumption of six minutes of uncompensated work per day. Also, as in *De Vega*, although a lower assumed rate may be conceivable, Defendants' estimate need not be the most conservative possible—only reasonable. Under these circumstances, Defendants' assumption falls well within the range of reasonable calculations courts have accepted in determining the amount in controversy.

### 3. Sixth Cause of Action: Failure to Timely Pay Final Wages Upon Termination

The Complaint alleges that Defendant "failed, and continued to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code sections 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendant's employ." ECF No. 1-2 at 23. Plaintiffs demand thirty days of pay as penalty for not receiving all wages due at time of termination. *Id.* at 24. In the notice of removal, Defendant calculated the amount in controversy by assuming that, during the relevant three-year period, approximately 2,217 putative class members separated from employment in California and were each entitled to the maximum thirty-day penalty. ECF No. 1 at 24. In moving to remand, Plaintiffs argue that Defendant's calculation improperly assumes a full 30 days for each class member and improperly assumed that putative class members worked eight-hour shifts. ECF No. 11 at 21.

Courts have found that assuming a 100% violation rate for waiting time penalties, without evidentiary support, is unreasonable. For example, in *Benitez v. Hyatt Corp.*, 722 F. Supp. 3d 1094, 1102 (S.D. Cal. 2024), the defendant calculated waiting time penalties based on the assumptions that each former employee (1) was entitled to penalties, (2) incurred the maximum thirty days of penalties, and (3) worked eight-hour days on average. The court remanded the case, highlighting that the defendant neither submitted evidence nor identified allegations in the complaint demonstrating that its former employees worked full-time schedules. *Id.* The court further observed that district courts routinely decline to credit waiting time penalty estimates where defendants fail to provide evidence regarding employees' average shift lengths. *Id.* By contrast, courts upheld such estimates where evidence of actual shift durations supported the defendant's assumptions. *Id.* at 1102-03.

Here, Defendant's assumption is unreasonable. As in *Benitez*, Defendant assumes that every terminated employee is entitled to the maximum thirty-day penalty while also presuming eight-hour workdays, yet Defendant offers no evidence to support either assumption. Without any evidentiary support, Defendant's calculation rests on inflated assumptions rather than reasonable inferences drawn from the Complaint. Accordingly, Defendant has failed to meet its burden of establishing the amount in controversy as to waiting time penalties, and its estimate should be disregarded.

### 4. Seventh Cause of Action: Failure to Provide Accurate Itemized Wage Statements

Plaintiffs allege that Defendant "intentionally and willfully failed to provide employees with complete and accurate wage statements," ECF No. 1-2 at 24, and Plaintiffs therefore seek "penalties and actual damages pursuant to Labor Code § 226(e)." *Id.* at 31. In calculating the amount in controversy, Defendants note that "Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee." ECF No. 1 at 25. Also, the statute of limitations for recovery is one year. *Id.* Defendants calculate that, during the limitations period beginning on April 22, 2024, there are

approximately 2,072 putative class members and 37,579 biweekly pay periods. *Id.* Using a $50 penalty for the first violation and $100 for each subsequent violation, Defendants estimate that the amount in controversy for this claim is at least $3,654,300.[3]  *Id.* Defendants acknowledge that "[e]ven if Defendant were to use [a] 20% violation rate . . . the amount in controversy for this claim would be no less than $913,575."[4]  ECF No. 15 at 21.   In their motion to remand, Plaintiffs maintain that Defendants' assumption of a 100% violation rate is unreasonable.  ECF No. 11 at 22.

The reasonableness of a 100% violation rate depends on the scope of the Complaint. For example, in *Ritenour v. Carrington Mortgage Services LLC,* the court found such an assumption reasonable where the complaint broadly alleged that the defendant "intentionally and willfully failed to provide Plaintiffs and the other class members with complete and accurate wage statements," and the plaintiff offered no alternative violation rate.  228 F.Supp.3d 1025, 1030 (C.D.Cal., 2017).  Although the allegations here are similarly broad, this case differs in a critical respect.  Unlike the plaintiff in *Ritenour*, Plaintiffs raise a significantly lower violation rate of 20%.  *See* ECF Nos. 11 at 20; 16 at 13–14.  In its reply, Defendant does not dispute the proposed violation rate.  *See* ECF No. 15 at 21.  Rather, Defendant notes that "even using this assumption, the aggregate amount in controversy would still far exceed $5 million."  *Id.*

The Court finds that, under these circumstances, a 100% violation rate is unreasonable. Although the Complaint contains broad allegations, Plaintiffs here have affirmatively challenged Defendant's 100% violation rate and offered a specific, lower alternative. Notably, Defendant does not rebut this proposed rate, but instead concedes that even applying a 20% rate would satisfy the jurisdictional threshold.  In light of Plaintiffs' challenge and Defendant's failure to justify a higher rate with evidence, the Court declines to adopt a 100% violation rate and instead relies on the 20% rate for purposes of estimating

---

[3] ($50 × 2,072 initial violations) plus ($100 × 35,507 subsequent violations).

[4] 25% x ($50 for the first 2,072 pay periods) + ($100 for each of the subsequent 35,507 pay periods).

the amount in controversy.

## C.    Conclusion

With respect to Plaintiffs' third and fourth causes of action for meal period and rest break violations, the Court concludes that Defendant's assumption of one violation per workweek is reasonable and supported by the broad allegations in the Complaint. Defendant has therefore met its burden as to these claims, which together place approximately $11,794,919 in controversy.  As to Plaintiffs' first cause of action for failure to pay minimum wages, the Court likewise finds that Defendant's assumption of six minutes of uncompensated work per day is reasonable, contributing a substantial additional amount to the total in controversy.  However, with respect to Plaintiffs' sixth cause of action for waiting time penalties, the Court finds that Defendant's assumptions—namely, that all terminated employees are entitled to the maximum thirty-day penalty and worked eight-hour days—are unsupported by evidence. Defendant has therefore failed to meet its burden as to this claim, and the associated amount in controversy is disregarded.  As to Plaintiffs' seventh cause of action for wage statement penalties, the Court finds that Defendant's assumption of a 100% violation rate is not reasonable under the circumstances. Instead, the Court adopts Plaintiffs' proposed 20% violation rate, resulting in approximately $913,575 in controversy for this claim.  Even excluding the waiting time penalties and applying a reduced violation rate for wage statement penalties, Defendant has demonstrated that well over $5,000,000 is in controversy.  Therefore, the Court need not address the Parties' additional arguments regarding attorneys' fees. *See* ECF Nos. 11 at 22-24; 15 at 26-27.

//

//

//

//

//

//

11

25-cv-1326-BJC-DEB

## IV.   ORDERS

For the foregoing reasons, the Court finds that Defendant has met its burden of establishing the amount in controversy by a preponderance of the evidence.  Accordingly, Defendant has established federal jurisdiction under CAFA, and Plaintiffs' motion to remand is **DENIED**.

**IT IS SO ORDERED.**

Dated:  June 17, 2026

_Bryan Cheeks_

Honorable Benjamin J. Cheeks
United States District Judge

25-cv-1326-BJC-DEB